Battle. J.
 

 It is now a well established principle of Equity, that if a married woman become entitled during her coverture to a legacy, or to a distributive share of an intestate’s estate, and her husband die without having reduced it into possession, or done anything equivalent thereto, the wife will be entitled to it, and may recover it to her own use. Garforth v. Bradley, 2 Ves. Sen. 675 ; Carr v. Taylor, 10 Ves. Jun. 578; Schuyler v. Hayle, 5 John’s Ch. Rep. 196; Revel v. Revel, 2 Dev. and Bat. Rep. 272; Hardie v. Cotton, 1 Ired. Eq. Rep. 61; Poindex-ter v. Blackburn, Ib. 286; McBryde v. Choate, 2 Ired. Eq. 610; Rogers v. Dumpass, 4 Ired. Eq. 385; Weeks v. Weeks, 5 Ired. Eq. 111; Mardree v. Mardree, 9 Ired. Rep. 295. Should the legacy or distributive share not be paid, or delivered over to the purchaser by the executor, or administrator, he cannot recover if at law, cither in his own own name, or
 
 hi
 
 the names of himself and wife; but must proceed in the names of himself and wife by a bill in equity, 'or by a petition in a Court of Law, in the nature of a bill in equity, under the 5th section of the 64th chapter of the Revised Statutes, entitled, “ An act concerning filial portions, legacies and distributive shares of intestates” estates.” If the husband die, leaving his wife surviving after-bill or petition filed, but before decree, the legacy or dis
 
 *76
 
 tributive share will survive to the wife. Bond v. Simmons,. 3 Atk. Rep.
 
 21;
 
 Adams v. Lavender, 1 Me. and Y. 41. Such it seems would he the result if the husband died even ■after a decree, but before it was put in execution. Nanny v. Martin, I Eq. Ca. Ab. 68; McAulay v. Philips, 4 Ves. Jr. IS.. Notwithstanding the opinion of Lord Thur-low to the contrary. Heygate v. Annesley, 3 Bro. Ch. Ca. 362. These authorities clearly show, that upon the death of Thomas E. Yarbrough, the first husband of the defendant, Mrs. Green, her -distributive share in the estate of her deceased father, Erederick Rattle, survived to her, unless her right to it was defeated by the assignment, under which the defendant James S. Yarbrough claims it.
 

 A very important question arises, whether that assignment, supposing it to be
 
 Iona fide
 
 and 'for a valuable consideration, did have that effect. We have considered the subject with much attention, and with an anxious desire to come to a correct conclusion upon it, and an examination of all the cases to which we have access has satisfied us, that in England it is now settled, upon jn'inciple and authority, that a husband cannot assign, even for value, a greater interest in his wife’s equitable choses in action, than he has himself; that is, the right to reduce them into possession during the husband’s life, subject to the contingency of their surviving to her, should the assignee not have done so in the lifetime of the husband. We are aware that an impression has prevailed in this State, that a different rule has been established here. We are aware, further, that the impression alluded to has apparently the sanction of several
 
 ■dicta
 
 of our Judges; but, as neither the industry of the counsel for the assignee, nor our own researches, have enabled us to find a single adjudicated case in opposition to the English rule, we feel ourselves not only at liberty but bound to adopt it, as being more just and better supported by principle than the one for which the counsel contends.
 

 
 *77
 
 In England, tlie nature and extent of tlie interest of the husband in his wife’s equitable choses in action, and of his .power of disposing of them, have for a long time occupied the attention of the Court of Chancery. At first, the subject did not seem to have been well understood even by the •ablest equity Judges, and hence we find among the earlier, and even among some of the later cases, conflicting dicta, •as well as opposing decisions. We do not deem it necessary to review the cases in detail, because it has been so recently and ably done by Mr. Bell, in his work on the law of the property of husband and wife, book 3, ch. 2, sec. 3, (67 ]¿aw. Lib’y, p. 62). The doctrine now established is well summed up by Mr. Adams, in his Doctrine of Equity, page 142: “It has been contended that a husband’s assignment of his wife’s choses in action should exclude the wife’s right by survivorship, on the ground that such an assignment implies a contract to reduce the chose into possession, and is equivalent in equity to such a reduction. This proposition was first overruled in respect to bankruptcy, and it was decided, that whatever might be the right of purchasers for Value, the assignees in bankruptcy were ■,entitled to no such equity. It was next overruled as to all assignments, although, for valuable consideration, if the .chose were re-versionary, and .therefore incapable of present possession, leaving the question still open whether, if it were capable ■of immediate possession, or became so during the coverture, the wife should be excluded. The principle is now extended to all cases, and it is held that, although the husband’s contract for value may, as between himself and the assignee, be equivalent to a reduction into possession, yet, against the wife, who is no party to the .contract, it cannot have that effect.” ■ Eor these positions, the author refers to several late cases which we find, .so. far as we have the books at .hand to examine them, to be apposite <to the purpose for .which they are cited. It is worthy of remark, too,, that no
 
 *78
 
 oases to the contrary are referred to by the editors (Messrs. Ludlow and Collins) of the second American edition. Indeed, the learned editors have not subjoined any note to-the page upon which these propositions are found.
 

 We come now to the examination of cases which are sup-posed to have established a contrary doctrine in this State.' The first in the order of time is Knight v. Leak, 2 Dev. and Bat. Rep. 133. That wa^s the case of a
 
 vested legal remainder
 
 in the wife in a slave, which the Court held might be sold by the sheriff under execution against the husband, because he had the right to sell it himself, and thereby completely to transfer it to the purchaser. In arguing, the Court said, we understand the effect of an assignment by the husband of his wife’s equitable interest in a chattel, in which she has not the right of immediate enjoyment, to be different, for such assignment would not prejudice her right, should he die before her, and before the period allotted for such enjoyment to take effect. Homsley v. Lee, 2 Madd. R. 16; Perdew v. Jackson, 1 Rus. Rep. 1 ; Honner v. Martin, 3 Rus. 65. The next is Poindexter. v. Blackburn, 1 Ired. Eq. Rep. 286: there a legacy was given to the wife, which had not been received by the husband, nor disposed of by him in his lifetime, and the Court decided that it survived to her, saying, “ a legacy given to a married woman, or a distributive share falling to her during «overture, and not received by the husband, nor disposed of by him, in his lifetime, survives to the wife.” Howell v. Howell, 3 Ired. Eq. Rep. 522, which came before the Court upon a bill for a writ of sequestration, was the case of a bequest of a female slave to one for life, remainder over to a married woman, and the executor assented to the legacy, and the husband afterwards sold the slave: the Court decided, as they had often done before, that the assent of the executor made, the remainder a vested one, and they then go on to show that “Jesse Spurling, the husband, had
 
 *79
 
 such, an -interest in the -woman Jude1 and her children, as enabled him to sell and convey them, and that his vendee acquired by his purchase, the transaction being freed from ether objections, a complete title; and that Mrs. Spurling (the wife) had no interest in them, and consequently no claim to th.e aid of this Court. We are not unapprised that in some recent cases in the English Courts of Chancery, this doctrine is denied as a principle of equity. Such, we consider, however, 'as the settled law of North Carolina. In Rogers v. Bumpass, 4 Ired. Eq. 385, the Court decid-' ed that, where the husband gave his bonds to the administrator of the father of his wife, of whose estate she was a distributee, the bonds being given for certain purchases made at the administrator’s sale, and also for money lent to him out of the funds of the estate, there being no agreement that these were to be regarded as payments of the distributive share of the wife, the wife, after the death of her husband, was entitled to recover the whole of her distributive share. _ In coming to this conclusion, the Court said:
 
 i!r A
 
 debt, legacy or distributive share of the wife is under the control of the husband, so far as to enable him to release, assign or receive tuem. His release extinguishes them, and the collection of the money vests it in him as his absolute property. But if, in his lifetime, he neither releases, conveys, or receives her choses in action, but leaves them outstanding, they belong to the surviving wife.” The case of Weeks v. Weeks, 5 Ired. Eq. 111, was that of an expectant legal interest of the wife, not assigned by the husband in his lifetime, and the Court said, “ although the husband may assign or release his wife’s choses in action, or convoy them during the coverture, they undoubtedly survive to her or her representative.” In Mardree v. Mardree, 9 Ire. Rep. 295, the Court said, “ a distributive share, accruing to the wife during the coverture, does not vest in the husband, but will survive to the wife, unless received into possession
 
 *80
 
 by the husband.” They held, however, upon the particular circumstances of the case, that the husband had reduced his wife’s distributive share into possession, and consequently that it belonged t© him.
 

 Erom this review -of the cases to which our attention was •called by the counsel, and some others, which we met with ourselves, it manifestly appears that there is not one in which it has been adjudicated, that the husband’s assignee, for value of his wife’s equitable choses, can claim them against the surviving wife. Some of the expressions used by the Court, which we have quoted, may seem to imply that such was the opinion of the Judge who decided them ; but even as
 
 dicta,
 
 they may well be regarded as enunciations •of a general rule, without its being deemed necessary to advert to the exception to, or modification of, it. The cases mainly relied upon by the counsel to establish the ¡position for which he contended, was Knight v. Leake, and Howell v. Howell. In the first of these, the
 
 dictum
 
 shows ■only what we admit, that the .assignment, by the husband, ■of his wife’s equitable interest in a chattel, will not prejudice her right, should he die before her, and
 
 before
 
 the period allotted for such enjoyment to take effect; but it ■does not pretend to go further, and say what would be the rule, should the husband die .before the -wife and
 
 after
 
 the ■period allotted for her enjoyment to take
 
 effect
 
 The propositions are distinct, and have both been decided in favor of the wife in England, and we can see no good reason for holding here, that the admission of one of them in favor of the wife necessarily implies the rejection of the other. In the other case of Howell v. Howell, we do not know that we understand what the 'Court meant, when they said, “ we ■are not unapprised that in some recent cases in the English Courts of Chancery, the doctrine is denied as-a principle of equity.” What doctrine
 
 ? And
 
 what was intended by the •Court, when they said, further, “such, however, we con-
 
 *81
 
 •aider as tlio settled law of North Carolina.” We certainly ,can find nothing in what precedes or what follows these sentences to make out more than a mere conjectural
 
 dictum,
 
 ■.that the doctrine for which we contend was disavowed.
 

 There are one or two other very recent cases, which may seem to militate against the English principles, to which we have referred, but which certainly are not adjudications against it, and may, we think, be shown to he consistent with it. In Allen v. Allen, 6 Ired. Eq. 239, it was held that in this State, a wife has no right either as against her husband or his assignee for value, to have a provision made for her by a Court of Equity, out of a distributive share accruing to her during her coverture. And further, that the husband is not at liberty to make a voluntary disposition of such distributive share, even in trust for his wife, so as to prevent it from being liable to his creditors. The first part of the decision relating to what is called the wife’s equity for a settlement, had been made ’before, in Bryan v. Bryan, 1 Dev. and Bat. Eq. Rep. 47, and Lassiter v. Dawson, 2 Dev. Eq, Rep. 383. It is admitted to be in opposition to the rule well settled in -the English Courts of Chancery, and adopted by most of the States of this Union. The policy of our rule is very fully discussed and ably vindicated by the Chief Justice, Rueeijt, who delivered the opinion of the Court in Allen v. Allen, and it is,not now to be- questioned. The doctrine for -which we contend is not at all opposed by the latter proposition decided in that case, but is rendered in some degree ¡necessary by the first. We do not deny that the husband, or assignee ,pf the husband in his lifetime, may reduce the wife’s equitable choses in action into possession, and thus make them.his own: so may the creditors, .and to that extent only goes the decision of which we are speaking,, as well as the subsequent one in BARNES v. Pearson, 6 Ired. Eq. Rep. 482. The wife cannot resist the attempt of. her husband, his assignee for value
 
 *82
 
 or bis creditor, to get possession of
 
 the
 
 legacy or distributive share accruing to her during coverture, and thus deprive her of it. If the husband die before he succeeds, .the' wife’s right survives to her. What good reason is • there why the same result should not follow from his dying, before his assignee or his creditor had succeeded in his attempt? Why should the husband be able to transfer to another a greater right or interest, than he has himself ? We deprive by our rule the wife of her equity for a settlement : why go further and deprive her also of her benefit of the right of survivorship in her own property ? It is by no means a consoling answer to tell her that our law provides handsomely for her out of her husband’s estate: that may do very well where the husband has anything to leave, but it is but mockery when .he dies greatly indebted or insolvent.
 

 Let us ponder for a moment and enquire whether there is any fixed principle of equity, which, must of necessity operate so harshly against the right of the wife in such cases. In deciding Honner v. Martin,
 
 ubi supra,
 
 Lord Lyndhurst threw out a
 
 dictum,
 
 that equity considered the assignment of the husband as amounting to an agreement that he would reduce the property into possesion : it likewise considered what the party agreed to do- as being actually done, and therefore, when the husband had the power of reducing the property into possession, his assignment of the chose in action would be regarded as a reduction of it into possession. Principles of equity are, or ought to be, founded upon the most refined and exact principles of justice ; they ought to be as near as human frailty will permit the very elements of justice itself. Now we cannot see any justice in the principle, that while the husband cannot himself acquire the wife’s equitable choses in action, without reducing them into possession, he may by a
 
 mere agreement
 
 in favor of an assignee for value produce such a result. We
 
 *83
 
 'Cannot see the justice, refined or otherwise, of the Court of Equity not only assisting* a purchaser to aid the husband in depriving his wife of her rights, but actually resorting to a sort of magic to do it at once, instantaneously, by a mere agreement to which the wife is no party. We are therefore not surprised to find that sueh a doctrine could not commend itself to the enlightened mind of Vice Chancellor Shadwick, in the case of Ellison v. Elwin, 13 Sim. Rep. 309; of Vice Chancellor Bruce, in that of Ashby v. Ash-by, 1 C. M. Rep. 553, and of the judges in the other cases referred to by Mr. Adams. Our conclusion is, that the wife’s right to her distributive share of an intestate’s estate survives to her, if not reduced into possession by the husband, or his assignee for value in his lifetime. It must therefore be declared in this case, that neither the defendant Yarbrough, nor the defendant Battle, as the adminis-tors of Thomas E. Yarbrough, deceased, are entitled to the distributive share of the defendant, Mrs. Green, in her father’s estate:
 

 The only question which remains to be considered, is, whether the slaves which were put into the possession of the first husband of Mrs. Green, by her father, are under the circumstances stated in the pleadings to be charged against her as advancements. From the difficulty which might otherwise have attended this question, wo arc relieved by her fair and candid answer. She admits that they were intended by her father as advancements to her, and she submits that they may be charged against her by the administrator of her father in the distribution of his estate. The plaintiff is _ entitled to a decree to have an account taken of his administration of his intestate’s estate, under the direction of the Court, and that-he may settle with the parties entitled to distributive shares in the same, upon the principles above set forth. The costs of the plaintiff will
 
 *84
 
 be paid out of tbe estate of the intestate. The other parties will pay their own costs.
 

 Decree .accordingly.